IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARTHREX, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 22-cv-00465-CFC |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, and | : | |
| FEDERAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Kurt M. Heyman (# 3054)
Aaron M. Nelson (# 5941)
300 Delaware Ave., Ste 200
Wilmington DE 19801
(302) 472-7300
kheyman@hegh.law
anelson@hegh.law
*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

SMITH, KATZENSTEIN
& JENKINS LLP
Robert J. Katzenstein (# 378)
Julie M. O'Dell (#6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
RJK@sklaw.com
jodell@skjlaw.com
*Attorneys for Defendant Federal Insurance Company*

OF COUNSEL:

CARLTON FIELDS, P.A.
Steven J. Brodie
Aaron S. Weiss
Daniel G. Enriquez
2 MiamiCentral
700 NW 1st Avenue, Ste 1200
Miami, FL 33136
(305) 530-0050
sbrodie@carltonfields.com
aweiss@carltonfields.com
denriquez@carltonfields.com

OF COUNSEL:

LLOYD, GRAY, WHITEHEAD &
MONROE
Stephen E. Whitehead
Jennifer W. Wall
Mallory S. Hall
880 Montclair Road, Suite 100
Birmingham, AL  35213
Telephone: 205-967-8822
Facsimile:  205-967-2380
steve@lgwmlaw.com
jwall@lgwmlaw.com
mhall@lgwmlaw.com

Dated:  May 12, 2022

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................1

SUMMARY OF ARGUMENT .........................................................................2

STATEMENT OF FACTS ...............................................................................4

    A.    None of the Parties Are Physically Located in Delaware ....................4

    B.    The Policies Were Addressed to Arthrex in Florida ............................4

    C.    Florida Subpoenas to Arthrex Requesting Documents in Florida ........5

    D.    The Insurance Coverage Litigation ......................................................6

LEGAL ARGUMENT ....................................................................................7

    A.    Standard for Transfer of Venue ............................................................7

    B.    Venue is Proper in the MD Florida ......................................................8

    C.    The Balance of Interests Factors—e.g., the *Jumara* Factors—
          Favor Transferring this Action to the MD Florida ..............................9

          1.    Plaintiff's Forum Preference ....................................................11

          2.    Defendants' Forum Preference.................................................12

          3.    Whether the Claim Arose Elsewhere........................................13

          4.    The Convenience of the Parties as Indicated by by Their
               Relative Physical and Financial Condition..............................14

          5.    Convenience of the Witnesses..................................................14

          6.    Location of Books and Records.................................................16

          7.    Enforceability of the Judgment.................................................17

          8.    Practical Considerations that Could Make the Trial Easy,
               Expeditious, or Inexpensive ....................................................17

          9.    Relative Administrative Difficulty Due to Court Congestion
               .............................................................................................17

10.    Local Interest in Deciding Local Controversies at Home .......19

11.    Public Policies of the Fora .......................................................20

12.    Familiarity of the Trial Judge with the Applicable State Law
       .......................................................................................21

13.    Balancing the *Jumara* Factors .................................................23

CONCLUSION .............................................................................23

# TABLE OF AUTHORITIES

## Cases

*Andrews Int'l v. Indian Harbor Ins*,
  2013 WL 5461876 (D. Del. Sept. 30, 2013) ..................................... 10, 14-15, 17

*Aponte v. Brown & Brown of Florida, Inc*.,
  2019 WL 12536011 (M.D. Fla. Mar. 1, 2019).....................................................21

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
  2019 WL 2745724 (D. Del. July 1, 2019)...........................................................18

*Bayer Bioscience N.V. v. Monsanto Co.*,
  2003 WL 1565864 (D. Del. Mar. 25, 2003 .........................................................8

*Ceradyne, Inc. v. RLI Ins. Co*.,
  2021 WL 3145171 (D. Del. July 26, 2021)................................................. *passim*

*In re Citigroup Inc. Shareholder Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009) ...........................................................................8

*Gen. Sci. Corp. v. Den-Mat Holdings, L.L.C*.,
  2021 WL 4622548 (D. Del. Oct. 7, 2021)...........................................................17

*Genentech, Inc. v. Amgen Inc.*,
  2018 WL 503253 (D. Del. Jan. 22, 2018) ...........................................................8

*GXP Cap., LLC v. Argonaut Mfg. Servs., In*c.,
  234 A.3d 1186 (Del. Super. 2020) .....................................................................8

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995) ......................................................................*passim*

*Lemy v. Direct Gen. Fin. Co.*,
  885 F. Supp. 2d 1265 (M.D. Fla. 2012)..............................................................19

*Ontel Prods., Inc. v. Project Strategies Corp*.,
  899 F. Supp. 1144 (S.D.N.Y. 1995).....................................................................8

*Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am*.,
  2022 WL 1063845 (D. Del. Apr. 8, 2022) ................................................. *passim*

*Ranger Ins. Co. v. Bal Harbour Club, Inc.*,
  549 So. 2d 1005, 1007-09 (Fla. 1989) ................................................................. 21

*Ricoh Co. v. Aeroflex, Inc.,*
  279 F. Supp.2 d 554 (D. Del. 2003) ................................................................ 11

*RSUI Indemnification Co. v. Murdock*,
  248 A.3d 887 (Del. 2021) .............................................................................. 22

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
  676 F. Supp. 2d 321 (D. Del. 2009) ............................................................. 11

*Topics Entm't Inc. v. Rosetta Stone Ltd.*,
  2010 WL 55900 (W.D. Wash. Jan. 4, 2010) .................................................. 8

*United States, et al. ex rel. Joseph B. Shea v. Arthrex, Inc., et al.*,
  Case No. 1:20-cv-10210 (D. Mass.) .................................................... *passim*

*Zazzali v. Swenson*,
  852 F. Supp. 2d 438 (D. Del. 2012) ............................................................... 9

*Zilberstein v. Frankenstein*,
  2021 WL 5289104 (Del. Super. Ct. Nov. 12, 2021) ...................................... 8

**Statutes**

28 U.S.C. §1391(b)(1) ........................................................................................ 9

28 U.S.C. §1404(a) ..................................................................................... *passim*

8 Del. C. §145 .................................................................................................. 20

**Rules**

Fed. R. Civ. P. 45(c)(1) ................................................................................... 16

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

This is an insurance coverage lawsuit filed by a Florida-based company against out-of-state insurers that should be transferred to the Middle District of Florida (the "MD Florida").

Plaintiff Arthrex, Inc. ("Arthrex") is a prominent Florida-based medical device company. Last year, following the filing of a lawsuit under the Federal False Claims Act in the District of Massachusetts (the "FCA Lawsuit"), Arthrex "agreed to resolve allegations that it violated the FCA by paying kickbacks that caused the submission of false claims to the Medicare program." [1] In its press release [2] describing the settlement (the "FCA Settlement"), attorneys and agents with the United States Department of Justice ("DOJ") and other federal agencies noted as follows:

- "Paying bribes to physicians to distort their medical decision-making corrupts the health care system."

- "This settlement demonstrates our dedication to ensuring that taxpayers and patients get a health care system that is on the level."

- "Kickbacks have no place anywhere in our health care system, and we will continue to identify and punish this illegal conduct."

- "Medical device manufacturers who engage in such kickback schemes undermine the integrity of federal health care programs."

---

[1]    *See* https://tinyurl.com/n5m2bw6k.

[2]    *See id.*

Arthrex now seeks insurance to indemnify Arthrex for the FCA Settlement and costs incurred for subpoenas that were returnable in Florida (the "Florida Subpoenas").

Specifically, Florida-based Arthrex is seeking insurance from New York-based National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and New Jersey-based Federal Insurance Company ("Federal"). National Union issued the primary policy to Arthrex (the "National Union Policy") and Federal issued a follow-form excess policy (the "Federal Policy").[3]

The Insurers now request that the Court enter an order, pursuant to 28 U.S.C. §1404(a), transferring this action to Arthrex's home district: the MD Florida.

## SUMMARY OF ARGUMENT

Under §1404(a), a district court may transfer a civil action to another district where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. This action could have been brought in the MD Florida, where Arthrex is headquartered and where the Florida Subpoenas were returnable. The address listed on the Policies is in the MD Florida, and the Policies contain a Florida amendatory endorsement. A balancing of the factors that Third Circuit courts

---

[3]   National Union and Federal are referred to as the "Insurers," and the National Union Policy and the Federal Policy are referred to as the "Policies."

consider in determining if transfer is appropriate strongly weighs in favor of transferring this action.

The MD Florida is the most appropriate and convenient venue because it is where Arthrex is headquartered, where the Policies were addressed for mailing, where key potential witnesses and documents are located, where many of the acts underlying Arthrex's claim for coverage occurred, and where Arthrex suffered any alleged harm under the Policies. Further, Florida has an interest in adjudicating coverage under Policies for a Florida-based company and containing endorsements conforming the Policies to Florida law. Moreover, as shown below, the MD Florida is a much less congested legal venue than this District.

The connections between this action and Delaware, by comparison, are weak. The only connection to Delaware is Arthrex's status as being incorporated in Delaware, which is an insufficient reason to keep this action in Delaware.

Accordingly, consistent with its decision last month in a very similar context, *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am*., 2022 WL 1063845 (D. Del. Apr. 8, 2022), and Judge Noreika's decision last year in *Ceradyne, Inc. v. RLI Ins. Co*., 2021 WL 3145171 (D. Del. July 26, 2021), the Court should grant the Insurers' motion to transfer for the convenience of the parties, pursuant to 28 U.S.C. §1404(a).

## STATEMENT OF FACTS

### A.    None of the Parties Are Physically Located in Delaware

Arthrex is a corporation that is headquartered in the MD Florida, and which is incorporated in Delaware. (*See* Complaint, ¶5). National Union is a Pennsylvania corporation with its principal place of business in New York. (*Id*. ¶6). Federal is an Indiana corporation with its principal place of business in New Jersey. (*Id*. ¶7).

### B.    The Policies Were Addressed to Arthrex in Florida

The National Union Policy covers multiple risks and contains a D&O Coverage Section, an Employment Practices Coverage Section, and a Fiduciary Liability Coverage Section. (*Id*. ¶12-13; Ex. 1, National Union Policy, Declarations). The primary National Union underwriters involved with underwriting and issuing the National Union Policy were located in Pennsylvania. (Declaration of James Robert MacAneney, Ex. 1, ¶4). There is no evidence that any underwriting by National Union took place in Delaware.

The Federal Policy is a first-layer excess policy that follows-form to the National Union Policy, except as otherwise provided in the Federal Policy. (Complaint, ¶¶14-15; Ex. 2, Federal Policy). The Federal underwriters involved with underwriting and issuing the Federal Policy were located in New York. There is no evidence that any underwriting by National Union took place in Delaware.

4

The Policies are addressed for mailing to Arthrex at its headquarters in Florida and contain a Florida Amendatory Endorsement conforming certain provisions to Florida law. (Doc. 1-1, Declarations, Endorsement #1).

### C.     Florida Subpoenas to Arthrex Requesting Documents in Florida

On January 8, 2020, the DOJ issued the first of the Florida Subpoenas to Arthrex. (Doc. 1-4, Complaint, ¶¶55-62). This subpoena requested Arthrex's internal assessments, analyses, policies and procedures, and communications. (Doc. 1-4, pp. 5-6). Moreover, the DOJ "requested documents in the personal possessions of Reinhold and John Schmieding." (Complaint, ¶¶61-62). Arthrex's headquarters is in Florida.

On February 7, 2020, the DOJ issued the second of the Florida Subpoenas to Arthrex that "included a document request specifically naming Reinhold Schmieding, Arthrex's founder and CEO, and John Schmieding, Arthrex's Senior Vice President and General Counsel." (*Id*. ¶¶60-62; Doc. 1-5, p. 5). Both Schmiedings are residents of Florida. (MacAneny Decl., ¶¶5-6). The Florida Subpoenas were signed by Assistant United States Attorneys from the District of Massachusetts and were returnable in the MD Florida. (Doc. 1-4, 1-5, p. 1). The DOJ also sought to interview John Schmieding. (Complaint, ¶107).

On or about February 4, 2020, Joseph B. Shea filed the FCA Lawsuit, under seal, against Arthrex. *United States, et al. ex rel. Joseph B. Shea v. Arthrex, Inc., et al.*, Case No. 1:20-cv-10210 (D. Mass.) (Doc. 1-3).

The FCA Lawsuit alleged that Arthrex paid kickbacks to physicians to utilize and recommend Arthrex products. *Id*. at ¶¶1-4. The FCA Lawsuit was not filed against Arthrex's directors and officers, but rather asserted a claim directly against Arthrex, an unaffiliated doctor (Dr. Peter Millett), and his separate company. *Id*. On November 8, 2021, Arthrex and the DOJ disclosed a $16 million settlement—the FCA Settlement. (Complaint, ¶69-70; Doc. 1-6).

Arthrex sought coverage under the Policies for the fees and costs incurred in response to the Florida Subpoenas and FCA Lawsuit and indemnification for the amounts Arthrex paid to the United States in connection with the FCA Settlement. (Complaint, ¶¶34–35).

The Insurers contend that the Florida Subpoenas did not constitute a Claim, as defined in the National Union Policy, and that the FCA Settlement was uninsurable as a matter of public policy and under the terms of the Policies.

### D.   **The Insurance Coverage Litigation**

Arthrex filed this insurance coverage action against the Insurers seeking insurance proceeds to cover their fees and costs incurred in connection with the

Florida Subpoenas and FCA Lawsuit, and for the amounts Arthrex paid to the United States in connection with the FCA Settlement.

Less than twenty-four hours later, the Insurers filed their own coverage action in the MD Florida against Arthrex, Case No. 3:22-cv-00226 (M.D. Fla.) (the "Florida Action").

## LEGAL ARGUMENT

### A.    Standard for Transfer of Venue

As this Court noted in *Paycom*, §"1404(a) provides that '[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Paycom*, 2022 WL 1063845, at *2 (citing §1404(a)). Therefore, §1404(a) requires a two-part determination: (1) whether the transferee court is one in which the case might have been brought; and (2) whether the convenience of the parties and witnesses and the interest of justice would be better served by transfer to a different venue. *Ceradyne*, 2021 WL 3145171, at *4–5.

As this Court further noted in *Paycom,* "[a]lthough there is 'no definitive formula or list of the factors to consider' in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests 'protected by the language of §1404(a).'" *Paycom*, 2022 WL 1063845, at *2.

The Insurers also note that the "first-filed rule" should not alter the outcome of the transfer analysis and lead to a different result than was reached in *Paycom* and *Ceradyne*. First, there is a strong preference in Delaware and elsewhere to look past the strict time-stamp as to when the filings were made when, as is the case here, the cases were filed only hours apart.[4]

Moreover, even if "the court [were to find] that this action is first-filed, albeit only by several hours…the court [should] conclude[] that the 1404(a) factors nevertheless weigh in favor of litigating this dispute in [the MD Florida.]" *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at *1 (D. Del. Mar. 25, 2003); *Genentech, Inc. v. Amgen Inc.*, 2018 WL 503253, at *7 (D. Del. Jan. 22, 2018) (evaluating transfer using the *Jumara* and declining to apply the first-filed rule).

### B.   Venue is Proper in the MD Florida

This action could have been brought in the MD Florida because Arthrex is based in the MD Florida. Indeed, that is where the Insurers filed their coverage

---

[4]    *Zilberstein v. Frankenstein*, 2021 WL 5289104, at *4 (Del. Super. Ct. Nov. 12, 2021) ("When two cases are filed at approximately the same time, the court compares the fora without preference for one action over the other to avoid rewarding the victor in a 'race to the courthouse.'") (citing *GXP Cap., LLC v. Argonaut Mfg. Servs., In*c., 234 A.3d 1186 (Del. Super. 2020) and *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106 (Del. Ch. 2009)); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) ("[The first-filed] rule is usually disregarded where the competing suits were filed merely days apart.); *Topics Entm't Inc. v. Rosetta Stone Ltd.*, 2010 WL 55900, at *4 (W.D. Wash. Jan. 4, 2010) (same conclusion).

action. Arthrex is (1) headquartered in the MD Florida; (2) the Policies are addressed to Arthrex's headquarters in the MD Florida and contain a Florida amendatory endorsement; and, (3) the MD Florida is where Arthrex allegedly suffered harm under the Policies. Thus, the MD Florida has personal jurisdiction over the parties and venue is appropriate in that district under §1391(b)(1).

### C.    The Balance of Interests Factors—e.g., the *Jumara* Factors—Favor Transferring this Action to the MD Florida

As this action could have been brought in the MD Florida, "the Court must balance the appropriate considerations and determine whether, under the particular facts of the case, the request to transfer venue should be granted." *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 448 (D. Del. 2012). The transfer analysis focuses on the convenience of the parties and witnesses and public interests of justice, analyzed through the lens of the *Jumara* factors.

The six private interests for courts to consider are: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendants' preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F.3d at 879. The six public interests for courts to consider are (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from

court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law. *Id*. at 879–80.

Here, Delaware only has one connection to this action—it is Arthrex's place of incorporation. The MD Florida, on the other hand, has numerous connections to and a greater interest in the resolution of this coverage dispute, and is a more convenient venue for both the parties and the Court.

As such, the *Jumara* factors weigh in favor of transferring this action. *Ceradyne*, 2021 WL 3145171, at *10 (finding *Jumara* factors weighed in favor of transferring coverage action to district in which insured was headquartered during relevant time period); *Andrews Int'l v. Indian Harbor Ins*, 2013 WL 5461876, at *4–5 (D. Del. Sept. 30, 2013) (transferring coverage action to district where insured was located).

This Court examined these factors in *Paycom*. After examining each *Jumara* factor, the Court found that Oklahoma—the location of the insured's headquarters and the place the policies were delivered—was the appropriate forum for the dispute. Guided by this Court's decision in *Paycom* and Judge Noreika's similar decision in *Ceradyne*, each factor is examined in turn.

### 1.   <u>Plaintiff's Forum Preference</u>

While the Insurers recognize that this factor weighs against transfer, when evaluating other factors, the Court may consider plaintiff's lack of "home turf" ties to the forum in finding transfer is appropriate. *Paycom,* 2022 WL 1063845, at *3; *Ceradyne*, 2021 WL 3145171, at *5. Thus, while Arthrex's choice of forum is entitled to deference, "it is not dispositive," *Ceradyne*, 2021 WL 3145171, at *5, and any such deference can be outweighed, as it is here, upon balancing of the other *Jumara* factors.

Moreover, even if the Court were to deem this action "first filed" over the Florida Action, "Delaware courts are not hesitant to transfer a first-filed…action to a more appropriate forum if warranted by the facts of the case," using the *Jumara* factors. *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 330–31 (D. Del. 2009) (citing *Ricoh Co. v. Aeroflex, Inc.,* 279 F. Supp.2 d 554 (D. Del. 2003)).

Further, examining transfer under a first-filed lens, as opposed to the *Jumara*, factors could produce a result inconsistent with *Paycom.* Specifically, in *Paycom*, the insurer had not filed a competing action in Oklahoma yet this Court found that transfer was appropriate under §1404(a). It thus would be inconsistent to *deny* transfer of a similar case with a similar *Jumara* factors analysis where the only

difference is that the Insurers in this case filed a competing action in a different district.

### 2.   Defendants' Forum Preference

In analyzing this factor, "courts usually examine whether the defendant can articulate rational, legitimate reasons to support its preferred venue." *Ceradyne*, 2021 WL 3145171, at *5. It is more appropriate to litigate this coverage action in Florida because that is where Arthrex is located, the location where the Policies were addressed for mailing, where key potential witnesses are located, and where many of the acts underlying Arthrex's claim for coverage occurred.

Consistent with this Court's clear statement in *Paycom*, Delaware has no relevant relationship to Arthrex's claim to recover insurance proceeds to cover their fees and costs incurred in connection with the Florida Subpoenas and FCA Lawsuit, and for the amounts Arthrex paid to the United States in connection with the FCA Settlement. *Paycom*, 2022 WL 1063845, at *6 (noting that any public policy interest that Delaware may have "is not directly related to insurance coverage disputes") (quoting *Ceradyne*, 2021 WL 3145171, at *9).

Because the Insurers' proposed forum is the most logical place to litigate this coverage action, this factor weighs in favor of transfer. *Paycom*, 2022 WL 1063845, at *3; *Ceradyne*, 2021 WL 3145171, at *5 (finding that insurers had legitimate

reason for preferring to litigate coverage action in forum closely tied to insured and its claim for coverage).

### 3.   __Whether the Claim Arose Elsewhere__

This factor weighs in favor of transfer. The parties dispute whether the Policies issued by the Insurers cover fees and costs Arthrex incurred in the MD Florida in response to the Florida Subpoenas, which were issued to Arthrex located in the MD Florida, returnable in the MD Florida, and sought corporate documents from Arthrex, whose headquarters is in the MD Florida. The Insurers understand DOJ also sought an interview from an Arthrex executive who resides in the MD Florida. Further, the Insurers understand that Arthrex's outside counsel conducted meetings in the MD Florida with Arthrex employees in connection with the DOJ requests.

The Policies were addressed for mailing to Arthrex at its headquarters in Florida and Arthrex's alleged harm due to the Insurers' denial of coverage occurred in Florida—not in Delaware. *Ceradyne*, 2021 WL 3145171, at *6 (finding that insured's claim arose in California, where Ceradyne was headquartered when excess policies incepted).

The relevant facts here are identical to those in *Paycom*.  There, as in this case, (1) no relevant conduct occurred in Delaware giving rise to the claim; (2) the government issued subpoenas to the policyholder in the transferee state; and (3) the

13

policyholder was a resident of the transferee state. *Paycom*, 2022 WL 1063845, at *3-4. Accordingly, this factor favors transfer.

### 4.   The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor weighs in favor of transfer or, at worst, is neutral. In evaluating this factor, a court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Ceradyne*, 2021 WL 3145171, at *6–7.

Here, Arthrex is located in the MD Florida and the Insurers are based in New York and New Jersey. None of the parties or their employees connected to this dispute are located in Delaware. To the extent any employees reside farther from Florida than from Delaware, Arthrex can afford the logistical and operational costs to the parties' employees in traveling to Delaware. Thus, litigation in the MD Florida is more convenient than litigation in Delaware because Arthrex is headquartered in the MD Florida.

### 5.   Convenience of the Witnesses

This factor supports transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Here "courts frequently look to the availability of witnesses as an

important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *Andrews Int'l*, 2013 WL 5461876, at *3.

Potential witnesses that may have relevant testimony include current and/or former employees of Arthrex, most likely located in the MD Florida. This includes the Schmiedings, who are potential witnesses to the allegation made against Arthrex, It also includes certain *former* Arthrex employees, including Dr. Jeffrey Wyman, who is alleged in the FCA Lawsuit to have negotiated with Dr. Millet on behalf of a competitor. (Doc. 1-3, ¶89). While Dr. Wyman is no longer employed by Arthrex, he remains a resident of the MD Florida.

At a minimum, other MD Florida-based witnesses may include: Peter Dreyfuss (Arthrex's Senior Director, Engineering), Bill Benavitz (Arthrex's Senior Director, Product Management), Kristin Diaz-Garcia (Arthrex's Associate General Counsel) and Lauren Gabler (Arthrex's Litigation Paralegal). Moreover, other potential witnesses could include the Massachusetts- and District of Columbia-based federal prosecutors, the Massachusetts relator, the Colorado individual Q*ui Tam* defendant, the ten doctors listed in the February 7, 2020 subpoena, and various non-Delaware lawyers represented Arthrex and Arthrex employees.

The common thread with all of these witnesses is that none of them are located in Delaware and thus none could be compelled to attend a trial in this District. *See* Fed. R. Civ. P. 45(c)(1).

And, "[a]lthough these fact witnesses may be compelled to sit for a deposition in [another jurisdiction], this court has acknowledged that deposition testimony is not a complete substitute for live trial testimony." *Ceradyne*, 2021 WL 3145171, at *6. Accordingly, the "convenience of the witnesses" factor weighs in favor of transferring this action to the MD Florida. *Paycom*, 2022 WL 1063845, at *4 (noting that potential witnesses were outside Court's subpoena power and finding this factor favored transfer); *Ceradyne*, 2021 WL 3145171, at *6 (finding factor weighed in favor of transfer because potential fact witnesses were located in another state and neither party identified any potential Delaware witnesses).

### 6.  <u>Location of Books and Records</u>

This factor either supports transfer or is neutral. In addressing this factor, courts give weight to the location of books and records "to the extent the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Relevant documents in this case will include files concerning the Policies, the Florida Subpoenas and the FCA Lawsuit, correspondence between Arthrex and the Insurers related to Arthrex's request for coverage, and defense counsel's invoices for work done in connection with the FCA Lawsuit. Many of these documents are located in

Florida, where Arthrex is headquartered. No documents relevant to this action are located in Delaware. *Andrews Int'l*, 2013 WL 5461876, at *3.

### 7.   Enforceability of the Judgment

This factor is neutral. If a judgment in favor of Arthrex were issued, it would be equally enforceable in either Delaware or Florida.

### 8.   Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

This factor weighs in favor of transfer. This action has no connection to Delaware other than Arthrex's state of incorporation. On the other hand, Arthrex is headquartered in Florida, and many of the likely witnesses, particularly those who work or worked for Arthrex, as well as relevant documents are located in Florida. *Paycom*, 2022 WL 1063845, at *5 (finding factor weighed in favor of transfer due to location of witnesses); *Gen. Sci. Corp. v. Den-Mat Holdings, L.L.C.*, 2021 WL 4622548, at *3 (D. Del. Oct. 7, 2021) (finding this factor weighed strongly in favor of transfer because neither party had a connection with Delaware, other than one party's state of incorporation, and witnesses and evidence were located in the jurisdiction where that party had its principal place of business).

### 9.   Relative Administrative Difficulty Due to Court Congestion

This factor weighs in favor of transfer. Here, courts look to statistics from the Administrative Office of the United States Courts. *Paycom*, 2022 WL 1063845, at *5. The statistics show that, for the 12-month period ending December 31, 2021, the

median length of time between filing and trial for civil cases in this District was 36.5 months, as opposed to 28.7 in the MD Florida.[5]

Likewise, this District has a higher number of weighted filings per judgeship (953) than the MD Florida (566). *Id*. As this Court explained in *Paycom*, "[w]eighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions…Cases that require substantially more judicial resources than the average civil case receive a higher weight." *Id*. at 5.

Moreover, as this Court further noted in *Paycom*, the December 31, 2021 statistics "do not account for the vacancy that the elevation of…Judge Leonard P. Stark, to the Federal Circuit created earlier this year.…The vacancy has required this Court to reassign certain cases to a vacancy docket and take other measures to manage the Courts substantial caseload." *Id*. at 5.

Finally, as this Court[6] has previously noted, the "per judge" statistics from the Administrative Office of the United States Courts do not account for Senior Judges. While this District does not have any Senior Judges that maintain active chambers, in addition to its fifteen active District Court judges, the MD Florida benefits from

---

[5]    *See* https://tinyurl.com/2uu4hfx5.

[6]    *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 2019 WL 2745724, at *5 (D. Del. July 1, 2019).

the continued service of fourteen Senior Judges—twelve of whom maintain active chambers.[7]

Given the districts' relative caseloads and available judges, this factor favors transfer to the MD Florida. *Paycom*, 2022 WL 1063845, at *5, *Ceradyne*, 2021 WL 3145171, at *8.

### 10. <u>Local Interest in Deciding Local Controversies at Home</u>

This factor weighs in favor of transfer. The considerations as to this factor are essentially identical to those before this Court in *Paycom.* Specifically, in *Paycom,* this Court found that "Oklahoma has an interest in deciding a dispute that concerns insurance policies" for "a company headquartered in Oklahoma." *Id*.

Here, Arthrex is headquartered in Florida, the Policies are addressed for mailing to Arthrex in Florida and the National Union Policy contains a Florida amendatory endorsement. And, as such, the MD Florida has an interest in deciding a dispute that concerns insurance policies obtained by a company headquartered in Florida. *Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1273 (M.D. Fla. 2012) ("[T]he [Florida] Office [of Insurance Regulation] retains a comprehensive power to…regulate each person who sells insurance…in Florida."). Indeed, the Florida Office

---

[7]    *See* https://www.flmd.uscourts.gov/judges/district.

of Insurance Regulation's website identifies National Union and Federal as insurers that are regulated by the state of Florida.[8]

Moreover, this Court and Judge Noreika have rejected the proposition that Delaware has a public policy interest in having insurance coverage disputes of this type adjudicated in Delaware. *Paycom*, 2022 WL 1063845, at *6 (quoting *Ceradyne*, 2021 WL 3145171, at *9) ("I agree with Judge Noreika that "**[a]lthough Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not directly related to insurance coverage disputes**.") (bolding in original).

### 11.   Public Policies of the Fora

As this Court found in *Paycom*, this factor "largely overlaps the local interest factor." *Paycom*, 2022 WL 1063845, at *6. Moreover, as Judge Noreika observed when analyzing this factor in *Ceradyne*, to the extent "the Delaware statute [8 Del. C. §145] governing indemnification and advancement of officers" bears on the public policy analysis, such "policy is implemented through Delaware's state courts which are responsible for setting the legal precedents that guide the application of Section 145." *Ceradyne*, 2021 WL 3145171, at *8-9. In any event, like this Court in

---

[8]      *See* MacAneney Decl., ¶7.

*Paycom*, Judge Noreika found that this "public policy is not directly related to insurance coverage disputes." *Id.*

By comparison, insurance is a regulated industry in Florida, and it is in that jurisdiction where the Policies were delivered. *Aponte v. Brown & Brown of Florida, Inc.*, 2019 WL 12536011 (M.D. Fla. Mar. 1, 2019) ("The Court notes that insurance is a highly regulated industry as shown by the [state] licensing requirements discussed."); *Ceradyne*, 2021 WL 3145171, at *9 (finding that state has a strong interest in regulating its residents' policies).

Moreover, Florida public policy prohibits the indemnification of intentional misconduct where—as here—the primary purpose of liability is to deter wrongdoers. *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So. 2d 1005, 1007-09 (Fla. 1989) (public policy of Florida prohibits an insured from being indemnified for a loss resulting from an intentional wrongful act).

Considering Florida's interest in avoiding a moral hazard with one of its own domestic companies, and without a countervailing interest from Delaware, this factor weighs in favor of transfer.

### 12. <u>Familiarity of the Trial Judge with the Applicable State Law</u>

The final *Jumara* factor is neutral. This coverage action involves the application of the Policies' plain terms with respect to coverage for the FCA Lawsuit, the Florida Subpoenas, and the FCA Settlement.

As this Court noted in *Paycom*, "[t]his is a diversity case, so *Jumara* factor 12 is relevant." In  *Paycom*, the policyholder "cite[d] *RSUI Indemnification Co. v. Murdock*, 248 A.3d 887, 896–901 (Del. 2021), in which the Delaware Supreme Court held that Delaware law applied to a directors and officers insurance policy dispute after it applied Delaware's choice-of-law test." *Paycom*, 2022 WL 1063845, at *6**.** The insurer responded that 'an insurance policy is a contract, and all Article III judges are more than capable of contract interpretation.'" *Id.* (cleaned-up).

This Court "agree[d] with [the insurers and found that] Article III judges, wherever located, are competent to interpret director and officer insurance policies." *Id.*, at *7. This Court further observed that "at this early stage in the controversy, [it was] unable to determine to what jurisdiction Delaware's choice-of-law test would point." This Court further noted that "[t]he parties have not briefed how Delaware's most significant relationship test would apply, and, as the multi-layered and fact-specific analysis in *Murdock* shows, the analysis is neither clear cut nor straight-forward. *Murdock*, 248 A.3d at 896–97 ('The contacts to be taken into account at this step are: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties.')." This Court, therefore, concluded that "this factor is neutral." *Id.*

The analysis here is the same; regardless of which jurisdiction's law applies, the MD Florida is capable of carrying out the required coverage analysis.

### 13.   __Balancing the *Jumara* Factors__

Weighing and analyzing the twelve *Jumara* factors is done on a case-by-case basis. *Jumara*, 55 F.3d at 883. Here, eight *Jumara* factors weigh in favor of transfer, three are neutral, and *only one* (plaintiff's forum preference) weighs against transfer.

Accordingly, under *Jumara* and consistent with this Court's decision in *Paycom* and Judge Noreika's decision in *Ceradyne*, this action should be transferred to the MD Florida, pursuant to 28 U.S.C. §1404(a).

### __CONCLUSION__

For the foregoing reasons, Defendants respectfully request that this Court grant their motion and transfer this action to the MD Florida, pursuant to 28 U.S.C. §1404(a).

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Aaron M. Nelson*
Kurt M. Heyman (# 3054)
Aaron M. Nelson (# 5941)
300 Delaware Ave., Ste 200
Wilmington DE 19801
(302) 472-7300
kheyman@hegh.law
anelson@hegh.law
*Attorneys for Defendant National Union*
*Fire Insurance Company of Pittsburgh,*
*Pa.*

OF COUNSEL:

CARLTON FIELDS, P.A.
Steven J. Brodie
Aaron S. Weiss
Daniel G. Enriquez
2 MiamiCentral
700 NW 1ˢᵗ Avenue, Ste 1200
Miami, FL 33136
(305) 530-0050
sbrodie@carltonfields.com
aweiss@carltonfields.com
denriquez@carltonfields.com

SMITH, KATZENSTEIN
& JENKINS LLP

*/s/ Robert J. Katzenstein*
Robert J. Katzenstein (# 378)
Julie M. O'Dell (#6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
RJK@sklaw.com
jodell@skjlaw.com
*Attorneys for Defendant Federal*
*Insurance Company*

OF COUNSEL:

LLOYD, GRAY, WHITEHEAD &
MONROE
Stephen E. Whitehead
Jennifer W. Wall
Mallory S. Hall
880 Montclair Road, Suite 100
Birmingham, AL  35213
Telephone: 205-967-8822
Facsimile:  205-967-2380
steve@lgwmlaw.com
jwall@lgwmlaw.com
mhall@lgwmlaw.com

Dated:  May 12, 2022