IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARTHREX, INC.,

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and FEDERAL INSURANCE COMPANY,

Defendants.

Civil Action No. 22-00465-CFC

---

Larry R. Wood, Jr., Adam V. Orlacchio, Anna Elizabeth Currier, James G. Gorman, III, BLANK ROME LLP, Wilmington, Delaware; Justin F. Lavella, Alexander H. Berman, BLANK ROME LLP, Washington, District of Columbia

*Counsel for Plaintiff*

Kelly Elizabeth Rowe, Kurt M. Heyman, Aaron M. Nelson, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Robert J. Katzenstein and Julie M. O'Dell, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Aaron S. Weiss, Daniel G. Enriquez, Steven J. Brodie, CARLTON FIELDS, P.A., Miami, Florida

*Counsel for Defendants*

**MEMORANDUM OPINION**

November 8, 2022
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Arthrex, Inc. filed this breach of contract case against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. and Federal Insurance Company. D.I. 1 at 1–2. Arthrex alleges that Defendants' refusal to reimburse it for costs it incurred in responding to government investigative subpoenas and in settling a *qui tam* lawsuit filed in Massachusetts violates the terms of certain insurance policies. D.I. 1 ¶ 144–45. Pending before me is Defendants' motion to transfer the case to the Middle District of Florida. D.I. 18. Because Defendants have shown that, on balance, the convenience of the parties and witnesses and the interests of justice strongly favor transfer, I will grant the motion.

## I. BACKGROUND

Arthrex is a Delaware corporation with its principal place of business in the Middle District of Florida. D.I. 17 ¶ 5; D.I. 20 at 3. National Union is a Pennsylvania corporation with its principal place of business in New York. D.I. 17 ¶ 6. Federal Insurance is an Indiana corporation with its principal place of business in New Jersey. D.I. 17 ¶ 7.

In early 2020, an Assistant United States Attorney from the U. S. Attorney's Office in Massachusetts served on Arthrex two subpoenas in connection with the government's ongoing investigation of Arthrex for potential "federal healthcare

offenses." D.I. 1-4 at 389; D.I. 1-5 at 397. The first subpoena was served in January via email to Arthrex's headquarters in Florida. D.I. 22-2 at 651. The second subpoena was served on an Arthrex attorney in Massachusetts. D.I. 22-2 at 651. The subpoenas demanded the appearance of an Arthrex witness at the U.S. Attorney's Office in Fort Myers, Florida, or alternatively the production of documents mailed to the Massachusetts U.S. Attorney's Office. D.I. 1-4 at 389; D.I. 1-5 at 397.

In early February 2020, Joseph B. Shea filed a *qui tam* lawsuit against Arthrex in the District of Massachusetts. *See United States ex rel. Joseph B. Shea v. Arthrex, Inc.*, No. 20-10210 (D. Mass. dismissed Feb. 11, 2022). On November 4, 2021, Arthrex reached a settlement with the United States to resolve the government's investigation and Shea's lawsuit. D.I. 1-6 at 407. Arthrex thereafter asked Defendants to reimburse it for the fees and costs it incurred in responding to the subpoenas and the *qui tam* lawsuit and the amount Arthrex paid to the United States in connection with the settlement. D.I. 1 ¶¶ 34–35. Defendants have refused at least in part Arthrex's coverage demand. D.I. 1-8 at 423; D.I. 1-9.

The parties engaged unsuccessfully in nonbinding mediation, after which Arthrex filed this suit on April 9, 2022. D.I. 22 at 4. The next day, Defendants filed a declaratory judgment action in the Middle District of Florida, seeking a judgment that Arthrex was not entitled to the coverage it demanded. D.I. 22 at 4;

*National Union Fire Insurance Co. v. Arthrex, Inc.*, No. 22-226 (M.D. Fla. Apr. 10, 2022). That suit is effectively a mirror image of this action.

Arthrex moved in the Florida case to transfer that action to this District. No. 22-226, D.I. 28. Judge Chappell, who is overseeing the Florida case, noted that the Florida case and this case should probably be consolidated and heard by a single judge. D.I. 25-1 at 3–4. Rather than "rush out an order and risk inconsistent rulings on the same transfer issue," Judge Chappell stayed the Florida case and deferred to me to rule in the first instance on the transfer question. D.I. 25-1 at 4–5.

## II. DISCUSSION

### A. Legal Standards

Defendants ask me to transfer this case to the Middle District pursuant to 28 U.S.C. § 1404(a). D.I. 18. That section provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Arthrex does not dispute that this action might have been brought in the Middle District. D.I. 20 at 8–9; D.I. 22. Therefore, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer this action. (As neither defendant is from Delaware or Florida and the amount in

controversy is over $75,000, I have subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.)

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant[s], the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty

> in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

Arthrex argues that when a transfer motion is filed in one of two parallel actions in different federal district courts, a "relevant factor" to be considered in addition to the 12 interests identified in *Jumara* is the so-called "first-filed rule." D.I. 22 at 6. That rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990). This "power," however, "is not a mandate directing wooden application of the rule . . . ." *Id.* On the contrary, "[a]pplication of the rule is discretionary." *Id.* As the Court held in *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205 (3d Cir. 2016) (in banc), "the first-filed rule is grounded on equitable principles and requires district court judges to fashion a flexible response to the issue of concurrent jurisdiction." *Id.* at 216 (cleaned up).

### B. Analysis of the *Jumara* Factors

#### 1. Plaintiff's Forum Preference

This factor is of paramount importance and therefore weighs strongly against transfer. *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018).

#### 2. Defendant's Forum Preference

This factor favors transfer.

#### 3. Whether the Claim Arose Elsewhere

None of the events giving rise to the claim occurred in Delaware. And although it is not clear from the record if Arthrex issued its coverage demand from Florida or received Defendants' rejection of that demand in Florida, it is undisputed that the parties' dispute is about coverage for expenses that Arthrex incurred in part in Florida. D.I. 20 at 13. Accordingly, this factor favors transfer.

#### 4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is neutral. No party has a physical presence in Delaware. Arthrex is located in Florida but does not concede that Florida is a more convenient forum for it. D.I. 22 at 11–12. Defendants' offices are in New York and New Jersey, and thus closer to Delaware, but they do not concede that Delaware is a more convenient forum for them. D.I. 24 at 6. All three parties are national corporations and none of the parties argues that it cannot bear the cost of

litigating in either forum. D.I. 22 at 11–12; D.I. 24 at 6.

**5. The Convenience of Witnesses**

This factor is neutral. Under Third Circuit law, the district court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). Neither party alleges that any witness will be unavailable for trial, but each can name one non-employee witness who falls within the subpoena power of their chosen forum. D.I. 20 at 15; D.I. 22 at 14.

**6. The Location of Books and Records**

This factor is neutral. *Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. Neither party alleges that the books and records in this action could not be produced in either forum. D.I. 20 at 16–17; D.I. 22 at 14.

**7. The Enforceability of the Judgment**

The parties agree that this factor is neutral. D.I. 20 at 17; D.I. 22 at 14.

### 8. Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Although I did not consider economic cost and logistical inconvenience of potential party employee witnesses when I assessed factors 4 and 5, it is appropriate to consider these issues in assessing "practical considerations." *See Paycom*, 2022 WL 1063845, at *5; *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 475–76 (D. Del. 2013).

Defendants argue that this factor favors transfer because Delaware's only connection to the lawsuit is as Arthrex's state of incorporation, whereas Arthrex is headquartered in Florida, many of the likely witnesses live there, and relevant documents are located there. D.I. 20 at 17. Arthrex responds that if this action is transferred, Arthrex will be forced to amend the pleadings in the Florida action and will have to comply with certain procedural requirements to assert a bad faith claim that it has alleged in this case. D.I. 22 at 15.

Though transferring the case will present additional work for Arthrex in the short-term, in the long term it will minimize travel costs and logistical inconvenience for the potential employee witnesses located near Arthrex's headquarters in Florida. Accordingly, this factor favors transfer.

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor strongly favors transfer. According to the most recent data provided by the United States Courts, the weighted case filings per active judgeship in this District between July 1, 2021 and June 30, 2022 were 873. *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-2. By comparison, the weighted case filings per active judgeship in the Middle District of Florida for that period were 570 and the national weighted case filings per active judgeship were 501. Notably, these statistics do not take into consideration the availability of senior judges to help active judges handle their caseloads. Delaware has no senior judges; whereas the Middle District has 14, *see About the Judges*, U.S. DIST. CT. MIDDLE DIST. OF FLA., https://www.flmd.uscourts.gov/judges/district (last visited Nov. 7, 2022). Given these statistics, it is not surprising that the median time from the filing of a civil case to trial in the Middle District is 29.9 months as compared to 36 months in this district. *U.S. District Courts*, *supra*.

### 10. Local Interest in Deciding Local Controversies at Home

It is undisputed that Arthrex is headquartered in Florida and that Defendants do business in Florida and are subject to oversight by the Florida Office of

Insurance Regulation. D.I. 20 at 19–20. Thus, Florida has a local interest in this action.

Arthrex argues that "when a Delaware corporation is involved, Delaware has an interest in resolving the dispute." D.I. 22 at 16. Arthrex cites, and I know of, no authority that supports this proposition where the dispute is in federal court and not between Delaware corporations. In any event, I agree with Judge Noreika that "[a]lthough Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not directly related to insurance coverage disputes." *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *9 (D. Del. July 26, 2021).

Accordingly, this factor favors transfer.

**11. Public Policies of the Fora**

Arthrex argues that "Florida and Delaware have directly opposing public policies impacting this litigation." D.I. 22 at 17; *see also* D.I. 22 at 18 ("[T]he public policies of Florida and Delaware conflict in a manner impacting coverage."); D.I. 22 at 19 (arguing that the parties' "contractual arrangement itself triggers Delaware's public policy in support of freedom of contract and expressly subordinates Florida's separate public policy" against the insurability of certain types of losses). Defendants do not dispute this assertion. Accordingly, this factor is neutral.

### 12. Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

The parties agree that this factor is neutral. D.I. 20 at 21; D.I. 22 at 19.

### 13. Summary of Factors

In sum, of the 12 *Jumara* factors, five weigh in favor of transfer (one of them strongly in favor), one weighs against transfer (and is to be given paramount importance), and six are neutral. Considered in their totality, the factors weigh strongly in favor of transfer to the Middle District of Florida.

## C. The First-Filed Rule

Arthrex asks me to woodenly apply the first-filed rule to deny Defendants' motion based on Arthrex's filing of this action the day before Defendants filed the Florida action. D.I. 22 at 6–8. I will, however, exercise my discretion and not apply the rule under the circumstances present here. "[T]he rule's primary purpose[s] [are] to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.*, 850 F.2d at 977. Neither purpose would be served by application of the rule here. Judge Chappell stayed resolution of Arthrex's transfer motion to avoid the risk of inconsistent judgments; and she has made it clear that if I transfer this case to Florida, she will consolidate the cases and thereby conserve judicial resources. D.I. 25-1 at 3–5. As application of the *Jumara* factors makes clear, the convenience of the parties and witnesses

and the interests of justice are better served if this case is transferred to Florida. Thus, a transfer of the case is warranted under § 1404(a).

## III. CONCLUSION

For the reasons discussed above, I will grant Defendants' motion to transfer the case to the Middle District of Florida.