# EXHIBIT I

**CARLTON FIELDS**

ATTORNEYS AT LAW

**Chrysler Building**
405 Lexington Avenue | 36th Floor
New York, New York 10174-0002
212.785.2577 | fax 212.785.5203
www.carltonfields.com

Atlanta
Hartford
Los Angeles
Miami
**New York**
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

J. Robert MacAneney
Shareholder
(212) 380-9615 Direct Dial
rmacaneney@carltonfields.com

March 1, 2021

**VIA EMAIL**
Justin F. Lavella, Esq.
Blankrome
1825 Eye Street NW
Washington, D.C. 20006

RE:   Claim:       US DOJ Subpoena
      Insured:     Arthrex, Inc.
      Policy No.:  01-340-76-97 (the "Policy")
      AIG File No.: 4467406650US

Dear Mr. Lavella,

As you know, we represent AIG Claims, Inc., the claims administrator for National Union Fire Insurance Company of Pittsburgh, PA, (together, "National Union"), in connection with claims arising under insurance policy number 01-340-76-97 issued to Arthrex, Inc. ("Arthrex" or the "Insured") by National Union. Please allow this to supplement AIG's prior coverage correspondence, dated April 17, 2020.

We write to respond to the Insured's request for reconsideration of this matter under the Policy's Pre-Claim Inquiry Coverage. By way of background, Arthrex, Inc. ("Arthrex") previously provided National Union with copies of a Subpoena dated January 8, 2020 (the "January 8th Subpoena") and a second subpoena dated February 7, 2020 (the "February 7th Subpoena") (together, the "Subpoenas"), directing Arthrex to produce documents and appear before the United States Department of Justice ("DOJ"). AIG previously advised that there was no coverage under the Policy because the Subpoenas do not meet the definition of Claim as defined by the Policy. AIG also advised that the subpoenas do not meet the definition of a Pre-Claim because they are directed to Arthrex, Inc. and they are not directed at any Individual Insured.

The Subpoenas reveal that the DOJ is investigating possible violations of the False Claims Act, HIPAA, and the Anti-Kickback Statute. The January 8th Subpoena requests various documents relating to all royalties, consulting fees, and other remuneration Arthrex has paid to any physician or to any entity owned or controlled by one or more physicians. It also commands Arthrex to produce its policies concerning the payment of royalties, consulting fees and other remuneration to physicians. The January 8th Subpoena also specifically requests copies of all

Justin F. Lavella, Esq.
March 1, 2021
Page 2

documents concerning Dr. Peter Millet or ALM Research, including all documents produced in the action captioned *Joseph B. Shea v. Dr. Peter Millett*, ALM Research LLC, No. 1:17-cv-12233-ADB (D. Mass). The February 7th Subpoena requests copies of all documents concerning and communications with a list of 10 named physicians. Additionally, the DOJ request Arthrex to produce all communications with Reinhold Schmieding (CEO) and John Schmieding (General Counsel) concerning any royalty payments, consulting fees, or any other remuneration that Arthrex paid to a physician or which a physician sought from Arthrex. The DOJ requested copies of all responsive documents dating back to 2010.

We understand that although Arthrex continues to maintain that the Subpoenas constitute Claims under the Policy, under a reservation of rights, it has asked National Union to reevaluate coverage for this matter under the Pre-Claim Coverage provision of the Policy. Endorsement #26 amends Coverage A and Coverage B to state in relevant part:

> COVERAGE A: INDIVIDUAL INSURED INSURANCE
>
> This policy shall pay the Loss of any Individual Insured arising from a:
>
> (i) Claim made against such Individual Insured for any Wrongful Act of such Individual Insured; and
> (ii) Pre-Claim Inquiry, to the extent that such Loss is either Pre-Claim Inquiry Costs or Liberty Protection Costs;
>
> except when and to the extent that a Company has indemnified such Individual Insured.
>
>
> COVERAGE B: PRIVATE COMPANY INSURANCE
>
> (i) Company Liability: This policy shall pay the Loss of any Company arising from a Claim made against such Company for any Wrongful Act of such Company.
> (ii) Indemnification of an Individual Insured: This policy shall pay the Loss of a Company arising from a:
>   (a) Claim made against an Individual Insured for any Wrongful Act of such Individual Insured; and
>   (b) Pre-Claim Inquiry, to the extent that such Loss is either Pre-Claim Inquiry Costs or Liberty Protection Costs;
>
> but only to the extent that such Company has indemnified such Individual Insured.

Under the Policy, defines Pre-Claim Inquiry as follows:

> (3) "Pre-Claim Inquiry" means any pre-Claim:
>   (1) verifiable request for an Individual Insured of any Company (i) to appear at a meeting or interview; or (ii) produce documents that, in either case,

Justin F. Lavella, Esq.
March 1, 2021
Page 3

> concerns the business of that Company or that Individual Insured's insured capacities, but only if the request came from any:
> (a) Enforcement Body; or
> (b) Company […]

The Policy defines Pre-Claim Inquiry costs, in relevant part, as follows:

> (a) with respect to a Pre-Claim Inquiry as described [above], the reasonable and necessary pre-Claim fees, costs and expenses consented to by the Insurer and incurred by an Individual Insured solely in connection with his/her preparation for and response to a Pre-Claim Inquiry directed to such Individual Insured, including attendance at an interview or meeting requested by an Enforcement. . .

Arthrex has asserted that, at a minimum, the February 7th Subpoena satisfies the Policy's definition of Pre-Claim Inquiry because from the time that it received the Subpoena it was clear that the DOJ was requesting that Arthrex to produce documents concerning and communications with Reinhold Schmieding and John Schmieding which were only in the possession of the Schmiedings. Consequently, the February 7th Subpoena necessarily required the Schmiedings to produce documents to Arthrex so that it could respond to the DOJ. Because the February 7th Subpoena required Arthrex to produce documents and things from the Schmiedings, Arthrex contends that the Pre-Claim Inquiry Coverage was triggered at that time.

Further, Arthrex asserts that in addition to requiring the Schmiedings to respond to the DOJ requests, it was also evident at the time Arthrex received the February 7th Subpoena that the DOJ would be requiring John Schmieding, and possibly Reinhold Schmieding, to appear for an interview. We understand that the DOJ has, in fact, required John Schmieding to appear for an interview and that interview was conducted in late January 2021.

In further support of its position that the February 7th Subpoena triggered the Pre-Claim Inquiry Coverage, Arthrex has provided copies of a PowerPoint presentation that Arthrex presented to the DOJ in a meeting in September 2020, an email from Assistant United States Attorney David Derusha confirming that the DOJ is conducting parallel civil and criminal investigations concerning the topics addressed in the Subpoenas, and an email scheduling Mr. Schmieding's interview. Arthrex further reported that at the time of Mr. Schmieding's interview, the DOJ made settlement overtures to Arthrex which Arthrex is seriously considering. Please continue to keep National Union apprised of its discussions with the DOJ and all developments in this matter.

After further consideration of all the additional materials and documents provided by Arthrex since National Union issued its initial coverage evaluation, National Union agrees to accept the February 7th Subpoena as having satisfied the definition of Pre-

Justin F. Lavella, Esq.
March 1, 2021
Page 4

Claim Inquiry. Please note, however, that National Union continues to maintain that there currently is no Claim, as that term is defined in the Policy, with respect to Arthrex or the Schmiedings.

Please be advised that National Union's supplemental coverage position is based on the information presently available to us. This letter is not and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by National Union or any of its affiliates. National Union expressly reserves all of its rights under the Policy, at law or in equity, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

Should you have any additional information that you feel either would cause us to review our position or would assist us in our continued evaluation of this matter, we ask that you provide it as soon as possible. Please keep us apprised of all developments in this matter, specifically including Arthrex's settlement discussions with the DOJ. Also, if you are served with any additional demands or pleadings, please forward them to us immediately, so that we can review our coverage position.

If you have any questions or comments, or if we can otherwise be of assistance to you regarding this matter, please do not hesitate to contact me.

Sincerely,

Carlton Fields, P.A.

*J. Robert MacAneney*

J. Robert MacAneney

111657423.1