# EXHIBIT M



## Civil Remedy Notice of Insurer Violations

| | |
|---|---|
| Filing Number: | 657576 |
| Filing Accepted: | 11/17/2022 |

**Warning!** Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **ARTHREX, INC.** |
| Street Address: | **1370 CREEKSIDE BOULEVARD** |
| City, State Zip: | **NAPLES, FL  34108** |
| Email Address: | **LAUREN.MEARS@ARTHREX.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **ARTHREX, INC.** |
| Policy #: | **01-340-76-97** |
| Claim #: | **44674066450 US** |

### Attorney

| | |
|---|---|
| Name: | **MICHAEL R. ESPOSITO** |
| Street Address: | **201 EAST KENNEDY BOULEVARD, SUITE 520** |
| City, State Zip: | **TAMPA, FLORIDA  33602** |
| Email Address: | **MICHAEL.ESPOSITO@BLANKROME.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**UNKNOWN**

| | |
|---|---|
| Type of Insurance: | **Professional Liability** |

DFS-10-363
Rev. 10/14/2008



# Civil Remedy Notice of Insurer Violations

Filing Number: **657576**

## Reason for Notice

Reasons for Notice:

**Claim Delay**

**Claim Denial**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Coverage B: Private Company Insurance (D&O Coverage Section, Section 1, Coverage B.)**
**Definition of "Loss" (D&O Coverage Section, Section 2.(u), as amended by Endorsement Nos. 1 & 4.)**
**Definition of "Defense Costs" (D&O Coverage Section, Section 2.(k).)**
**Definition of "Company" (General Terms and Conditions, Section 2.(b).)**
**Definition of "Named Entity" (General Terms and Conditions, Section 2.(i); Declarations, Item 1.)**
**Definition of "Claim" (D&O Coverage Section, Section 2.(b), as amended by Endorsement No. 29.)**
**Definition of "Individual Insured" (D&O Coverage Section, Section 2.(s), as amended by Endorsement No. 10.)**
**Definition of "Executive" (D&O Coverage Section, Section 2.(n).)**
**Definition of "Wrongful Act" (D&O Coverage Section, Section 2.(cc)(ii).)**
**Definition of "Pre-Claim Inquiry" (D&O Coverage Section, Endorsement No. 26.)**
**Advancement of Defense Costs - 90 Days (D&O Coverage Section, Section 7, as amended by Endorsement No. 4.)**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**Relevant Policy:**

**National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") sold a claims made PrivateEdge Plus Policy, No. 01-340-76-97, to Arthrex, Inc. ("Arthrex"), for the policy period April 26, 2019 to April 26, 2020 ("National Union Policy"). The National Union Policy provided Arthrex with, inter alia, "Directors, Officers and Private Company Liability Insurance ("D&O Coverage"). The relevant sections of the National Union Policy are outlined above.**

**Claim Background:**

In February 2020, during the applicable policy period, a qui tam complaint was filed, under seal, against Arthrex on behalf of the United States government and certain states by Joseph B. Shea ("Relator"), in an action styled United States, et al. ex rel. Joseph B. Shea v. Arthrex, Inc. et al., Civil Action No. 1:20-cv-10210 (D. Mass.).  As part of its responsibilities to investigate Relator's allegations, the United States Department of Justice propounded multiple subpoenas on Arthrex, dated January 8, 2020, and February 7, 2020 (collectively, "Subpoenas").  Both Subpoenas requested, among other things, documents from Arthrex and documents in the personal possessions of Arthrex's founder and CEO, as well as Arthrex's Senior Vice President and General Counsel (collectively, "Individual Insureds").  The February 7, 2020 subpoena identified these individuals by name.

In consultation with National Union, Arthrex and the Individual Insureds retained several law firms to assist with the defense of the above proceedings.  Arthrex has been required to pay the significant legal fees of all such retained law firms, including indemnifying the legal fees of the Individual Insureds.

After extensive settlement discussions between Arthrex and the United States government, the parties settled the qui tam action in excess of National Union's limit of liability.  The settlement was announced publicly on November 8, 2021.  Arthrex paid the settlement amount, plus interest, to the United States government on November 9, 2021.  Thereafter, the qui tam complaint was unsealed on November 17, 2021.

**Coverage Dispute:**

In February 2020, Arthrex provided timely notice of the Subpoenas to National Union.  On April 17, 2020, National Union denied the claim, wrongly arguing that the Subpoenas did not constitute a "Claim" or a "Pre-Claim Inquiry."  Notwithstanding National Union's denial of coverage, Arthrex requested consent to retain several law firms to act as defense counsel for Arthrex and the Individual Insureds, which National Union granted, subject to a specified rate cap.

Thereafter, Arthrex (represented by counsel), the broker, the Individual Insureds, and National Union engaged in numerous communications and conference calls, in which Arthrex repeatedly explained to National Union that the entire investigation, including the Subpoenas, almost certainly originated from a qui tam complaint - i.e., another Claim under the Policy - that remained under seal at the time.

Then, on March 1, 2021, National Union reversed course, and agreed that the February 7, 2020 subpoena constituted a "Pre-Claim Inquiry."  Accordingly, Arthrex submitted to National Union for reimbursement certain invoices of legal fees incurred on behalf of the Individual Insureds.  National Union agreed to pay only a small fraction of the total fees and costs Arthrex had submitted, and then, without explanation, paid $1000 less than the fraction it had previously agreed that it owed.  National Union continues to refuse to pay the outstanding $1000 that it agreed to pay, and has never explained the shortfall or its continued reticence to pay this amount.

Arthrex submitted for reimbursement certain additional invoices to National Union on June 2, 2021 and November 18, 2021.  Despite these additional submissions, National Union has made no additional payment of either Pre-Claim Inquiry Costs or Loss.  National Union has never explained its arbitrary categorization of some legal fees and costs as covered Pre-Claim Inquiry Costs and others as not Pre-Claim Inquiry Costs.

On February 18, 2021, Arthrex's defense counsel explained in another conference call with National Union that the United States government had made an oral offer of settlement.  On the same day, Arthrex made a written request for National Union to either consent to a potential settlement with the government or waive lack of consent as a coverage defense.  National Union responded, maintaining the position that a Claim had not been made, and thus, National Union could not consent, withhold consent, or agree to waive lack of consent to any settlement offer that Arthrex may be contemplating.  Notwithstanding National Union's position, Arthrex kept National Union apprised of its settlement negotiations with the United States government.  National Union did not object to the proposed settlement.

Following the settlement, the qui tam complaint was unsealed.  National Union did not respond to the unsealing of the qui tam complaint other than to agree to the scheduling of a mediation pursuant to the dispute resolution provisions of the Policy.

To date, Arthrex has been wrongly required to carry the burden without contribution from National Union for all Loss, including substantial Defense Costs and settlement amounts, arising from the defense and resolution of the qui tam action and corresponding Subpoenas, both on its own behalf and on behalf of its Individual Insureds.

National Union's continued refusal to pay, or even explain the basis for its refusal to pay, the balance of the

invoices submitted as Pre-Claim Inquiry Costs, and even the full amount of such costs for which National Union had expressly acknowledged coverage, was an indefensible, arbitrary, and capricious abdication of National Union's express and implied contractual responsibilities, and represents unreasonable reticence and delay in handling Arthrex's claim for insurance coverage.

In addition, National Union's continued refusal to pay Loss based on the sole erroneous position that neither the Subpoenas nor the qui tam complaint constitute a Claim is an unreasonable coverage position, contrary to the terms of the Policy and applicable law.

National Union's failure to pay also represents a failure to properly investigate Arthrex's insurance claim – National Union cannot now say it was not notified of the sealed qui tam complaint when Arthrex specifically informed National Union that the government investigation was likely attendant to precisely such a complaint. National Union's use of the sealed nature of a qui tam complaint as a pretext to assert it did not have notice represents both a failure to properly investigate based on available information as well as unreasonable and unfair claims handling.

## Comments

| User Id | Date Added | Comment |
| --- | --- | --- |
| denriquez@carltonfields.com | 01-13-2023 | Dear Sir or Madam:<br>This is the Insurer's response to the Civil Remedy Notice File No. 657576 ("CRN") filed by Arthrex, Inc. regarding National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). The CRN was filed with the Florida Department of Financial Services on November 17, 2022. After receiving the CRN, National Union conducted a thorough review of the matter referenced therein. National Union denies that it has violated the statute, as alleged in the CRN. National Union states that it has, at all times, acted in good faith and that it has acted fairly, honestly and with due regard for the interest of National Union's Insured under all applicable circumstances. Moreover, National Union states that the CRN fails to adequately describe the alleged violations and fails to provide sufficient information to allow National Union to correct any alleged violations. Furthermore, Arthrex failed to comply with the specificity requirements of Section 624.155 and therefore is invalid. |