# EXHIBIT N



## Civil Remedy Notice of Insurer Violations

| | |
|---|---|
| Filing Number: | 657578 |
| Filing Accepted: | 11/17/2022 |

**Warning!** Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | ARTHREX, INC. |
| Street Address: | 1370 CREEKSIDE BOULEVARD |
| City, State Zip: | NAPLES, FL  34108 |
| Email Address: | LAUREN.MEARS@ARTHREX.COM |
| Complainant Type: | Insured |

### Insured

| | |
|---|---|
| Name: | ARTHREX, INC. |
| Policy #: | 8240-1243 |
| Claim #: | KY20K2098481 |

### Attorney

| | |
|---|---|
| Name: | MICHAEL R. ESPOSITO |
| Street Address: | 201 EAST KENNEDY BOULEVARD, SUITE 520 |
| City, State Zip: | TAMPA, FLORIDA  33602 |
| Email Address: | MICHAEL.ESPOSITO@BLANKROME.COM |

### Notice Against

| | |
|---|---|
| Insurer Type: | Authorized Insurer |
| Name: | FEDERAL INSURANCE COMPANY |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**UNKNOWN**

| | |
|---|---|
| Type of Insurance: | Professional Liability |

DFS-10-363
Rev. 10/14/2008



# Civil Remedy Notice of Insurer Violations

Filing Number: **657578**

## Reason for Notice

Reasons for Notice:

**Claim Delay**

**Claim Denial**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Insuring Agreement (Section 1)** – The Insuring Agreement states that the policy at issue is excess to a "Primary Policy" National Union Fire Insurance Company of Pittsburgh, Pa. issued to Arthrex, Inc. The Insuring Agreement also provides that the excess policy fully incorporates the terms and conditions (or "follows form") of the "Primary Policy" National Union Fire Insurance Company of Pittsburgh, Pa. issued to Arthrex, Inc. unless those terms and conditions are expressly modified or deleted in the excess policy. The "Primary Policy" is the subject of a separate Civil Remedy Notice (No. 657576) that Arthrex, Inc. filed with this Department on November 17, 2022.

**Definition of "Primary Policy" (Section 13.)**
**Definition of "Insureds" (Section 13.)**
**Definition of "Underlying Insurance" (Section 13.)**
**"Maintenance of Underlying Insurance" (Section 2.)**
**"Depletion of Underlying Insurance" (Section 3.)**
**Declarations, Item 4(A)**
**Declarations, Item 5**

**Specific policy language of the "Primary Policy" (also outlined in the separate Civil Remedy Notice filed with this Department on November 17, 2022, No. 657576, noticing National Union Fire Insurance Company of Pittsburgh, Pa.):**
**Coverage B: Private Company Insurance (D&O Coverage Section, Section 1, Coverage B.)**
**Definition of "Loss" (D&O Coverage Section, Section 2.(u), as amended by Endorsement Nos. 1 & 4.)**
**Definition of "Defense Costs" (D&O Coverage Section, Section 2.(k).)**
**Definition of "Company" (General Terms and Conditions, Section 2.(b).)**
**Definition of "Named Entity" (General Terms and Conditions, Section 2.(i); Declarations, Item 1.)**
**Definition of "Claim" (D&O Coverage Section, Section 2.(b), as amended by Endorsement No. 29.)**
**Definition of "Individual Insured" (D&O Coverage Section, Section 2.(s), as amended by Endorsement No. 10.)**
**Definition of "Executive" (D&O Coverage Section, Section 2.(n).)**
**Definition of "Wrongful Act" (D&O Coverage Section, Section 2.(cc)(ii).)**
**Definition of "Pre-Claim Inquiry" (D&O Coverage Section, Endorsement No. 26.)**
**Advancement of Defense Costs - 90 Days (D&O Coverage Section, Section 7, as amended by Endorsement No. 4.)**

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**Relevant Policy:**

Federal Insurance Company ("Federal") sold a claims made Directors and Officers Liability and Reimbursement Excess Policy, No. 8240-1243, to Arthrex, Inc. ("Arthrex"), for the policy period April 26, 2019 to April 26, 2020 ("Federal Policy"). The relevant sections of the Federal Policy are outlined above. The Federal Policy is a "follows-form" excess policy that incorporates the terms and conditions of a "Primary Policy" that National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union," together with Federal, "Insurers") issued to Arthrex, unless such terms and conditions are expressly modified or deleted in the Federal Policy.

**Claim Background:**

In February 2020, during the applicable policy period, a qui tam complaint was filed, under seal, against Arthrex on behalf of the United States government and certain states by Joseph B. Shea ("Relator"), in an action styled United States, et al. ex rel. Joseph B. Shea v. Arthrex, Inc. et al., Civil Action No. 1:20-cv-10210 (D. Mass.). As part of its responsibilities to investigate Relator's allegations, the United States Department of Justice propounded multiple subpoenas on Arthrex, dated January 8, 2020, and February 7, 2020 (collectively, "Subpoenas"). Both Subpoenas requested, among other things, documents from Arthrex and documents in the personal possessions of Arthrex's founder and CEO, as well as Arthrex's Senior Vice President and General Counsel (collectively, "Individual Insureds"). The February 7, 2020 subpoena identified these individuals by name.

In consultation with the Insurers, Arthrex and the Individual Insureds retained several law firms to assist with the defense of the above proceedings. Arthrex has been required to pay the significant legal fees of all such retained law firms, including indemnifying the legal fees of the Individual Insureds.

After extensive settlement discussions between Arthrex and the United States government, the parties settled the qui tam action in excess of National Union's limit of liability, thus triggering Federal's layer of coverage. The settlement was announced publicly on November 8, 2021. Arthrex paid the settlement

amount, plus interest, to the United States government on November 9, 2021. Thereafter, the qui tam complaint was unsealed on November 17, 2021.

**Coverage Dispute:**

**In February 2020, Arthrex provided timely notice of the Subpoenas to the Insurers. On April 17, 2020, National Union denied the claim, wrongly arguing that the Subpoenas did not constitute a "Claim" or a "Pre-Claim Inquiry." Notwithstanding National Union's denial of coverage, Arthrex requested consent to retain several law firms to act as defense counsel for Arthrex and the Individual Insureds, which National Union granted, subject to a specified rate cap. Federal issued no coverage position regarding the Subpoenas at this time.**

**Thereafter, Arthrex (represented by counsel), the broker, the Individual Insureds, and the Insurers engaged in numerous communications and conference calls, in which Arthrex repeatedly explained to the Insurers that the entire investigation, including the Subpoenas, almost certainly originated from a qui tam complaint - i.e., another Claim under the Policy - that remained under seal at the time.**

**Then, on March 1, 2021, National Union reversed course, and agreed that the February 7, 2020 subpoena constituted a "Pre-Claim Inquiry." Accordingly, Arthrex submitted to National Union for reimbursement certain invoices of legal fees incurred on behalf of the Individual Insureds. National Union agreed to pay only a small fraction of the total fees and costs Arthrex had submitted, and then, without explanation, paid $1000 less than the fraction it had previously agreed that it owed. National Union continues to refuse to pay the outstanding $1000 that it agreed to pay, and has never explained the shortfall or its continued reticence to pay this amount. Again Federal issued no coverage position regarding the Subpoenas at this time.**

**Arthrex submitted for reimbursement certain additional invoices to National Union on June 2, 2021 and November 18, 2021. Despite these additional submissions, National Union has made no additional payment of either Pre-Claim Inquiry Costs or Loss. National Union has never explained its arbitrary decision to pay some legal fees and costs as Pre-Claim Inquiry Costs and not others. Again Federal issued no coverage position regarding the Subpoenas at this time.**

**On February 18, 2021, Arthrex's defense counsel explained in another conference call with the Insurers that the United States government had made an oral offer of settlement. On the same day, Arthrex made a written request for the Insurers to either consent to a potential settlement with the government or waive lack of consent as a coverage defense. National Union responded, maintaining the position that a Claim had not been made, and thus, National Union could not consent, withhold consent, or agree to waive lack of consent to any settlement offer that Arthrex may be contemplating. Federal never responded to Arthrex's February 18, 2021 request. Notwithstanding National Union's position and Federal's silence, Arthrex kept the Insurers apprised of its settlement negotiations with the United States government. Neither of the Insurers objected to the proposed settlement.**

**Following the settlement, the qui tam complaint was unsealed. Neither of the Insurers responded to the unsealing of the qui tam complaint other than to agree to the scheduling of a mediation pursuant to the dispute resolution provisions of the Primary Policy.**

**To date, Arthrex has been wrongly required to carry the burden without contribution from the Insurers for all Loss, including substantial Defense Costs, arising from the defense and resolution of the qui tam action and corresponding Subpoenas, both on its own behalf and on behalf of its Individual Insureds.**

**The Insurers' continued refusal to pay, or even explain the basis for their refusal to pay, the balance of the invoices submitted as Pre-Claim Inquiry Costs, and even the full amount of such costs for which National Union had expressly acknowledged coverage, was an indefensible, arbitrary, and capricious abdication of the Insurers' express and implied contractual responsibilities, and represents unreasonable reticence and delay in handling Arthrex's claim for insurance coverage. Moreover, Federal's failure to provide a coverage determination before joining a declaratory judgment lawsuit initiated by National Union was a complete abdication of Federal's duty to investigate and provide a timely coverage position to Arthrex.**

**In addition, the Insurers' continued refusal to pay Loss based on the sole erroneous position that neither the Subpoenas nor the qui tam complaint constitute a Claim is an unreasonable coverage position, contrary to the terms of the Primary Policy and applicable law.**

**The Insurers' failure to pay also represents a failure to properly investigate Arthrex's insurance claim – the Insurers cannot now say they were not notified of the sealed qui tam complaint when Arthrex specifically informed the Insurers that the government investigation was likely attendant to precisely such a complaint. The Insurers' use of the sealed nature of a qui tam complaint as a pretext to assert they did not have notice**

**represents both a failure to properly investigate based on available information as well as unreasonable and unfair claims handling.**

| Comments | | |
|---|---|---|
| **User Id** | **Date Added** | **Comment** |
| jwall@lgwmlaw.com | 01-13-2023 | Dear Sir or Madam: |
| | | This is the Insurer's response to the Civil Remedy Notice File No. 657578 (CRN) filed by Arthrex, Inc., regarding Federal Insurance Company (Federal). The CRN was filed with the Florida Department of Financial Services on November 17, 2022. After receiving the CRN, Federal conducted a thorough review of the matter referenced therein. Federal denies that it has violated the statute, as alleged in the CRN. Federal states it has, at all times, acted in good faith, and it has acted fairly, honestly and with due regard for the interest of Federal's Insured under all applicable circumstances. Moreover, Federal states the CRN fails to adequately describe the alleged violations and fails to provide sufficient information to allow Federal to correct any alleged violations. Furthermore, Arthrex failed to comply with the specificity requirements of Section 624.155 and, therefore, is invalid. |

DFS-10-363
Rev. 10/14/2008



Stephen E. Whitehead
Managing Shareholder
steve@lgwmlaw.com

Jennifer W. Wall
Shareholder
jwall@lgwmlaw.com

January 13, 2023

**BY CERTIFIED MAIL & EMAIL**
Michael R. Esposito, Esq.
Blank Rome
201 East Kennedy Boulevard
Suite 520
Tampa, Florida 33602
Michael.Esposito@BlankRome.com

|  |  |  |
|---|---|---|
| RE: | Complainant: | Arthrex, Inc. |
|  | DFS File No.: | 657578 |
|  | Filing Accepted: | November 17, 2022 |
|  | Policy No.: | 8240-1243 |
|  | Claim No.: | KY20K2098481 |
|  | Our File No.: | 1069.586 |

Dear Mr. Esposito:

    We represent Federal Insurance Company (Federal). National Union Fire Insurance Company of Pittsburgh, Pa. (National Union) issued PrivateEdge Plus Policy No. 01-340-76-97 to Arthrex, Inc. (Arthrex), for the period April 26, 2019 to April 26, 2020 (the Primary Policy).[1] The D&O Coverage Section of the Primary Policy provides limits of $10 million, subject to a $50,000.00 retention. Federal issued D&O Liability Excess Policy No. 8240-1243 to Arthrex for the same period (the Federal Policy) (collectively, the Policies). The Federal Policy provides limits of $10 million. The Federal Policy follows form to the Primary Policy.

    We write in response to the Civil Remedy Notice of Insurer Violations (Filing Number: 657578) (CRN) Arthrex filed with the Florida Department of Financial Services on November 17, 2022 pursuant to Florida Statute § 624.155.

---

[1] Federal understands Arthrex filed a separate CRN (No. 657576) against National Union on November 17, 2022.

*t:* 205 967 8822   *f:* 205 967 2380   www.lgwmlaw.com

880 Montclair Road / Suite 100 / Birmingham, AL 35213

January 13, 2023
Michael R. Esposito, Esq.
Blank Rome
Page 2

## I.     CRN ALLEGATIONS

The stated reasons for the CRN are "Claim Delay" and "Claim Denial." The CRN alleges Federal violated the following statutory provisions:

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |

The CRN includes a section titled "Claim Background," which purports to demonstrate violations of these statutory provisions. Federal responds to these allegations below.

## II.    FEDERAL'S RESPONSE

Federal denies each allegation of wrongdoing in the CRN. Federal denies any violation of the statutory provisions identified in the CRN or any other applicable statute. Federal denies it violated any provision of the Policies. Federal has performed its obligations under the Policies and, at all times, acted in good faith toward Arthrex.

The CRN contains allegations that relate exclusively to actions taken by National Union. Federal will not respond to those allegations, as they are not directed against Federal. Federal's failure to respond to allegations against National Union should not be considered as a comment on the merit of those allegations (or lack thereof).

### A.     The Subpoenas

The United States Department of Justice (DOJ) served Arthrex with two Subpoenas *Duces Tecum*, dated January 8, 2020 (the January 8, 2020 Subpoena) and February 7, 2020 (the February 7, 2020 Subpoena) (collectively, the Subpoenas). The Subpoenas required Arthrex to produce certain documents related to the DOJ's investigation of potential "Federal health care offenses." The CRN states, "Both Subpoenas requested, among other things, documents from Arthrex and documents in the personal possession of Arthrex's founder and

January 13, 2023
Michael R. Esposito, Esq.
Blank Rome
Page 3

CEO, as well as Arthrex's Senior Vice President and General Counsel (collectively, 'Individual Insureds'). The February 7, 2020 Subpoena identified these individuals by name."[2] The Subpoenas were directed only to Arthrex. The Subpoenas were not directed to any individual Arthrex office or director, notwithstanding that one request to Arthrex in the February 7, 2020 Subpoena related to its dealings with individual Arthrex representatives.

Coverage B of the D&O Coverage Section of the Primary Policy provides coverage for Loss incurred by Arthrex as a result of a Claim against Arthrex or any Individual Insured Arthrex indemnifies for a Wrongful Act. The Subpoenas do not satisfy any of the components of a "Claim" as defined in the Primary Policy.[3] The Subpoenas do not constitute "written demand[s] for monetary, non-monetary or injunctive relief." They are not "civil, criminal, administrative, regulatory or arbitration proceedings for monetary, non-monetary or injunctive relief." The Subpoenas are not directed at any Individual Insured. They do not identify an Individual Insured in writing as a person against whom a proceeding may be commenced. They do not identify a "Wrongful Act," as defined in the Primary Policy. They do not allege Arthrex (or any Individual Insured) committed "any breach of duty, neglect, error, misstatement, misleading statement, omission or act." The Policies, thus, do not afford coverage for any costs incurred in connection with responding to the Subpoenas.

The CRN alleges "Federal issued no coverage position regarding the Subpoenas." Even if the Subpoenas could come within the Claim definition in the Primary Policy, Arthrex has never alleged that the costs incurred in responding to the Subpoenas would exhaust (or potentially exhaust) the Primary Policy in order to trigger any reimbursement obligations by Federal.

B.   The *Qui Tam* Complaint and the Settlement Agreement

In February 2020, the DOJ filed a *qui tam* complaint against Arthrex (the *Qui Tam* Complaint). The CRN states, "Arthrex repeatedly explained to the Insurers that the entire investigation, including the Subpoenas, almost certainly originated from a qui tam complaint." The CRN also states, "Arthrex specifically informed the Insurers that the government investigation was likely attendant to precisely such a complaint." The CRN further states Arthrex advised the Insurers on February 18, 2021 that "the United States government had made an oral offer of settlement." Arthrex and the DOJ executed a settlement agreement on November 4, 2021 (the Settlement Agreement).

---

[2] The February 7, 2020 Subpoena requests "[a]ll communications with Reinhold Schmieding and/or John Schmieding concerned royalty payments, consulting fees, or any other remuneration that Arthrex paid or considered paying to a physician, or that a physician sought from Arthrex."
[3] As amended by Endorsement 29.

4337283

January 13, 2023
Michael R. Esposito, Esq.
Blank Rome
Page 4

Arthrex first provided Federal with copies of the unsealed *Qui Tam* Complaint and Settlement Agreement—which constitute a "Claim" under the Primary Policy definition—on November 18, 2021.[4] Prior to November 18, 2021, Arthrex did not provide Federal with any information regarding the allegations of *Qui Tam* Complaint or the terms of the Settlement Agreement. It only vaguely referenced a probable *qui tam* complaint and an oral settlement offer. Providing written notice of a Claim as defined in the Primary Policy is a condition precedent to coverage under the Policies. The Insurers have no obligation to pay any "Defense Costs" incurred (as defined in the Primary Policy) prior to their receipt of written notice of the Claim, which did not take place until November 18, 2021.

The CRN alleges Arthrex informed the Insurers of an "oral offer of settlement" and requested the Insurers "either consent to a potential settlement with the government or waive lack of consent as a coverage defense." The terms of the Settlement Agreement were not disclosed to the Insurers until Arthrex first provided a copy of the executed Settlement Agreement on November 18, 2021. Arthrex failed to comply with Clause 7 of the D&O Coverage Section of the Primary Policy.[5] Coverage under the Policies for Defense Costs and settlements related to a Claim only potentially may be afforded to the extent those costs and settlements have been consented to in writing by the Insurers. Arthrex deprived the Insurers of the opportunity afforded under the Primary Policy to associate in the defense and settlement of the *Qui Tam* Lawsuit.

The Policies do not afford coverage for the settlement payment to which Arthrex agreed under the Settlement Agreement because it comprises penalties and uninsurable restitution. Civil or criminal fines or penalties and "matters which may be deemed uninsurable under the law pursuant to which [the Policies] shall be construed" do not meet the definition of "Loss" under the Primary Policy to which the Federal Policy follows form.[6]

### III.    CONCLUSION

The allegations in the CRN are not supported by facts or evidence and do not demonstrate any violation of the enumerated statutory provisions. Federal has performed its obligations under the Policies and acted in good faith toward Arthrex. The Policies do not afford coverage for Arthrex's defense costs incurred or voluntary settlement payment in connection with the Subpoenas or *Qui Tam* Complaint. Moreover, Federal states the CRN fails to adequately describe the alleged violations and fails to provide sufficient information to allow Federal to correct any alleged violations. Furthermore, Arthrex failed to comply with the specificity requirements of Section 624.155 and therefore is invalid.

---

[4] Arthrex also at that time first provided defense invoices and other documents related to the Settlement Agreement and payment to the DOJ.
[5] As amended by Endorsement 26.
[6] As amended by Endorsements 1 and 4.

4337283

January 13, 2023
Michael R. Esposito, Esq.
Blank Rome
Page 5

  This letter and any further activity taken are subject to a full reservation of rights under the Policies, at law and in equity, including the right to conduct further investigation as needed. This reservation includes but is not limited to the right to assert, at any time, that Federal owed no duties to any Arthrex Insured, pursuant to any of the terms and provisions contained in the Policies or under any applicable principles of law or equity. Federal's reservation of rights is continuing in nature. Nothing contained herein or previously communicated by or on behalf of Federal shall prejudice Federal's ability to reserve rights or deny coverage based on policy provisions, applicable law, or further investigation.

  We trust this response addresses the allegations in the CRN. Should you have questions regarding this matter, please do not hesitate to contact us.

Very truly yours,

*Stephen E. Whitehead*
STEPHEN E. WHITEHEAD

*Jennifer W. Wall*
JENNIFER W. WALL

MSH/et

cc: **By Certified Mail and Email**
   Arthrex, Inc.
   c/o Lauren Mears
   1370 Creekside Boulevard
   Naples, Florida 34108
   Lauren.Mears@Arthrex.com

4337283